CLERK OF THE
CIRCUIT COURT
2020 NOV 23 PM 5:15
PG CO MD #45

## IN THE CIRCUIT COURT FOR PRINCE GEORGES COUNTY, MARYLAND

CRYSTAL ALSTON )
10006 Cedarhollow Ln )
Largo, MD 20774 )
)
)   Case No. CAL20-18897
Plaintiff, )
v. )
)
NELNET, INC. )
C T Corporation System )
5601 South 59th Street, Ste C )
Lincoln, NE 68516 )
)
)
Defendant, )
)
TOYOTA MOTOR CREDIT CORP. )
The Corporation Trust, Incorporated )
2405 York Road, Suite 201 )
Lutherville Timonium, MD 21093 )
)
)
Defendant, )
)
WAYPOINT RESOURCE GROUP, LLC )
Cogency Global Inc. )
1519 York Road )
Lutherville, MD 21093 )
)
Defendant, )
)
SOUTHWEST CREDIT SYSTEMS, L.P. )
The Corporation Trust, Incorporated )
2405 York Road, Suite 201 )
Lutherville Timonium, MD 21093 )
)
Defendant. )

Case# CAL20-18897
NEW CASE/PRO SE
CV CLERK FEE-        80.00
MD LEGAL SERV        55.00
RIF - NEW CAS        30.00
TOTAL               165.00
Rcvd PG15    Rcpt # 84366
MEI   JCP    BIK # 1234
Nov 25, 2020        10:24 am

## COMPLAINT AND JURY DEMAND

Plaintiff, Crystal Alston, sues defendants Nelnet, Inc. ("Nelnet"), Toyota Motor Credit Corp. ("Toyota"), Waypoint Resource Group ("Waypoint"), Southwest Credit Systems ("SWCS"), and alleges as follows:

1

## PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages, costs and attorney's fees brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et al. ("FDCPA"), the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-201 et al. ("MCDCA"), Maryland Consumer Protection Act, Md. Code Ann., Com Law § 13-101 et seq. ("MCPA") and the Fair Credit Reporting Act, 15 U.S.C. § 1681 et al. ("FCRA").

## PARTIES TO ACTION

2. Plaintiff is a natural person that resides in the state of Maryland.

3. Defendant Nelnet originates, holds, and services education loans.

4. Defendant Toyota provides automotive finance services.

5. Defendant Waypoint provides third-party collection services.

6. Defendant SWCS provides third-party collection services.

## FACTUAL ALLEGATIONS

10. Mrs. Alston's credit reports with TransUnion, Experian and Equifax (collectively, the "CRAs") contain inaccurate tradelines and collections, including numerous Nelnet student loan tradelines, a Toyota auto loan tradeline, and Waypoint collection.

### A. Nelnet Tradeline

11. All three CRAs reported about fourteen Nelnet student loan debts.

12. The Nelnet tradeline inaccurately, incompletely or misleadingly reported that Mrs. Alston was delinquent in the months of March, April, May and June of 2019.

13. Reporting Mrs. Alston as delinquent from March to June 2019 was inaccurate, incomplete or misleading because Mrs. Alston requested a forbearance before March 2019, but Nelnet failed to start the forbearance as requested.

14. Mrs. Alston was entitled to a forbearance as permitted by the policies and guidelines of the Department of Education and Nelnet. And Mrs. Alston took the steps that were outlined by the Department of Education and Nelnet to put her loan into forbearance.

15. Nelnet's failure to report the loan as in forbearance was inaccurate or misleading.

16. Alternatively, Nelnet's failure to report Mrs. Alston requested the loan go into forbearance prior to March 2019 was incomplete or misleading.

17. Mrs. Alston sent dispute letters to the CRAs in March, June and September 2020.

18. The dispute letters explained in sufficient detail that she contacted Nelnet prior to April 2019 and she requested a forbearance, but Nelnet failed to process the request.

19. At least one of the CRAs – TransUnion – forwarded Mrs. Alston's dispute to Nelnet.

20. Nelnet did not take Mrs. Alston's disputes seriously and continued reporting the disputed information without verifying the accuracy of that information.

21. Nelnet did not even report the debt as in a dispute status.

**B.    Toyota Tradeline**

22. All three CRAs reported a Toyota auto loan debt.

23. The Toyota tradeline omits and/or inaccurately reports the date of first delinquency.

24. Mrs. Alston sent dispute letters to the CRAs in March, June and September 2020.

25. The dispute letters explained in sufficient detail that Toyota omitted the date of first delinquency or reported the inaccurate date.

26. At least one of the CRAs – TransUnion – forwarded Mrs. Alston's dispute to Toyota.

27. Toyota did not take Mrs. Alston's disputes seriously and continued reporting the disputed information without verifying the accuracy of that information.

28. Toyota did not even report the debt as in a dispute status.

### C. Waypoint Collection

29. The Waypoint collection appeared on two of Plaintiff's credit reports.

30. Waypoint is reporting a $696 collection for Comcast.

31. Plaintiff owed approximately $300 to Comcast.

32. Mrs. Alston sent dispute letters to the CRAs in March, June and September 2020.

33. The dispute letters explained that Plaintiff was under no obligation to pay Waypoint any amount of money because Waypoint was not authorized to collect on the debt and that the debt amount that Waypoint sought to collect was more than double than what was actually owed.

34. Upon information and belief, Waypoint received notice of Plaintiff's dispute from one or both of the CRAs.

35. The Waypoint collection was removed from one credit report, however, prior to its removal no reasonable investigation took place. Either Waypoint instructed the credit bureau to remove it because Waypoint know that it should have never been reported or the credit bureau removed it because it knew Waypoint was unreliable source of information and was providing inaccurate information.

### D. SWCS Collection

36. After the Waypoint collection was removed, SWCS began reporting the Comcast collection to at least one of Plaintiff's credit reports.

37. Upon information and belief, Waypoint informed Comcast that Plaintiff disputed the debt when Waypoint returned the account back to Comcast.

38. Upon information and belief, Comcast informed SWCS that the account was disputed when the account was transferred to SWCS.

39. Alternatively, Waypoint failed to apprise Comcast that the debt was disputed.

4

40. Despite learning from Comcast or Waypoint that the debt was disputed, SWCS reported that debt to the CRAs without reporting the dispute status of the debt.

41. SWCS has reported the debt for months without notifying Plaintiff of her right to dispute the debt and request validation or verification of the debt.

42. Mrs. Alston disputed the debt with Equifax and Experian in September 2020.

43. The dispute letters explained that Plaintiff was under no obligation to pay SWCS any amount of money because SWCS was not authorized or did not establish that it was authorized to collect on the debt and even if SWCS could collect on the debt, the amount of debt was inflated by 100% of the actual amount of what was owed.

44. Upon information and belief, the dispute was forwarded to SWCS by CRA(s).

45. SWCS failed to conduct a reasonable investigation of Plaintiff's dispute.

## COUNT ONE: VIOLATION(S) OF FDCPA

46. Plaintiff incorporates the preceding allegations by reference.

47. Defendant Waypoint violated 15 U.S.C. § 1692e by reporting an inflated debt to the CRA(s) that it could not collect on. Upon information and belief, Waypoint had no information or documents to indicate that the legal steps were taken for a purported agent to collect from a debtor.

48. Defendant Waypoint violated 15 U.S.C. § 1692e by communicating information about the debt to a third-party without communicating that the debt was disputed. (*See* ¶ 39, *supra*). Waypoint received noticed of Plaintiff's dispute from a CRA, so Waypoint knew the debt was disputed when it failed to disclose its disputed status to the third-party.

49. Defendant SWCS violated 15 U.S.C. § 1692e by reporting an inflated debt to a CRA without reporting it was disputed. Upon information and belief, SWCS was informed by Comcast or Waypoint that the debt was disputed. (*See* ¶¶ 37, 38 & 40, *supra*).

5

50. Defendant SWCS violated 15 U.S.C. §§ 1692e and 1692g by failing to notify Plaintiff of her rights to dispute and/or request verification of the debt.

51. Defendants' violations caused the Plaintiff to endure damages including credit damage, injury to financial reputation, out-of-pocket costs, mental and emotional distress.

52. Defendants' conduct was the proximate cause of Plaintiff's injuries, rendering Defendants' liable for actual damages in an amount to be determined by the jury pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT TWO: VIOLATION(S) OF MCDCA

53. Plaintiff incorporates the preceding allegations by reference.

54. Defendant Waypoint violated Md. Code Ann., Com Law § 14-202(11) by violating the FDCPA as described in paragraphs 47 and 48.

55. Defendant SWCS violated Md. Code Ann., Com Law § 14-202(11) by violating the FDCPA as described in paragraphs 49 and 50.

56. Defendants' violations caused the Plaintiff to endure damages including credit damage, injury to financial reputation, out-of-pocket costs, mental and emotional distress, rendering Defendants liable for actual damages in an amount to be determined pursuant to Com Law § 14-203.

## COUNT THREE: VIOLATION(S) OF MCPA

57. Plaintiff incorporates the preceding allegations by reference.

58. Defendants violated the MCPA, Md. Code Ann., Com Law §13-301(14)(iii) when the Defendants violated Com Law § 14-202(11).

59. Defendants' violations caused the Plaintiff to endure damages including credit damage, injury to financial reputation, out-of-pocket costs, mental and emotional distress, rendering Defendants liable for actual damages and attorney's fees pursuant to Com Law §§ 13-408(a)-(b).

## COUNT FOUR: VIOLATION(S) OF FCRA

60. Plaintiff re-alleges and incorporates paragraphs 1 through 45.

### Nelnet's Unreasonable Response

61. Defendant Nelnet violated 15 U.S.C. §§ 1681s-2(b)(1)(A)-(E) by failing to conduct a reasonable investigation and properly respond to Plaintiff's disputes.

62. After receiving the dispute via the credit bureau(s), Nelnet merely verified the information on the dispute form—called an ACDV—matched the information in Nelnet's internal system for reporting to credit bureaus.

63. Although the credit bureaus forwarded a copy of Plaintiff's dispute letter, Nelnet did not review or consider the dispute letter and made no inquiry into whether the information in its internal system was accurate.

64. A reasonable investigation would have required Nelnet to review Plaintiff's dispute letter and search other internal systems to verify whether information in its internal system for reporting to the credit bureaus was accurate.

65. In addition to failing to conduct a careful investigation, Nelnet did not accurately report the results of investigation for it failed to even note that the debt was disputed.

### Toyota's Unreasonable Response

66. Defendant Toyota violated 15 U.S.C. §§ 1681s-2(b)(1)(A)-(E) by failing to conduct a reasonable investigation and properly respond to Plaintiff's disputes.

67. After receiving the dispute via the credit bureau(s), Toyota merely verified the information on the dispute form—called an ACDV—matched the information in Toyota internal system for reporting to credit bureaus.

68. Although the ACDV include a copy of the dispute letter, Toyota did not review or consider it and made no inquiry into whether the information in its internal system was accurate.

69. A reasonable investigation would have required Toyota to review Plaintiff's dispute letter and search its other internal systems to verify whether the information in the system for credit reporting was accurate.

70. In addition to failing to conduct a careful investigation, Toyota did not accurately report the results of investigation for it failed to even note that the debt was disputed.

### Waypoint's Unreasonable Response

71. Defendant Waypoint violated 15 U.S.C. §§ 1681s-2(b)(1)(A)-(E) by failing to conduct a reasonable investigation and properly respond to Plaintiff's disputes.

72. After receiving notice of Plaintiff's dispute from the credit bureau(s), Waypoint did not contact Comcast to verify whether the disputed information was accurate or inaccurate.

73. Waypoint's internal records were incomplete and/or insufficient for investigating Plaintiff's dispute and Waypoint could not properly investigate the dispute without contacting Comcast or obtaining additional information from some other source.

74. Waypoint made no effort to confirm its internal records were accurate and complete.

### SWCS' Unreasonable Response

75. Defendant SWCS violated 15 U.S.C. §§ 1681s-2(b)(1)(A)-(E) by failing to conduct a reasonable investigation and properly respond to Plaintiff's disputes.

76. After receiving notice of Plaintiff's dispute from the credit bureau(s), SWCS did not contact Comcast to verify the disputed information was accurate.

77. SWCS' internal records were incomplete and/or insufficient for investigating Plaintiff's dispute and SWCS could not properly investigate the dispute without contacting Comcast or obtaining additional information from some other outside source.

78. SWCS merely confirmed that it conveyed the information in its internal records verbatim to the credit bureaus.

79. SWCS made no effort to confirm its internal records were accurate and complete.

80. SWCS' cursory review and perfunctory response did not consist of a review of all the information forwarded from the credit bureaus.

81. SWCS failed to accurately report the results of its investigation, including failing to report that SWCS did not confirm with the investigation did not verify the information was accurate

82. SWCS failed to accurately report the results of its investigation when it failed to report that its' investigation did not verify the information was accurate.

83. SWCS failed to modify, delete or block the disputed information after Defendant failed to verify the information.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays:

A. That the Court award actual damages for Counts I & II;

B. That the Court award maximum statutory damages for Counts I and II;

C. That the Court award maximum punitive damages for Count II;

D. That the Court award costs and any reasonable attorneys' fees; and

E. That the Court award any such other and further legal and equitable relief as may be found appropriate and as the Court may deem equitable and just.

Respectfully submitted,

Crystal L. Alston
Crystal Alston (Pro Se)
10006 Cedarhollow Ln
Largo, MD 20774
Tel: (240) 463-2448